(87 App. Div. 306.)

O'CONNELL v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 6, 1903.)

1. INSURANCE—POLICY—PAYMENT OF PREMIUMS—PRIMA FACIE CASE.
    Where, in an action on a policy, defendant claimed that it was not in force, by reason of a failure of the insured to pay premiums, the introduction in evidence of a receipt for the disputed premium, signed and issued by defendant's general agents, established a prima facie case in favor of plaintiff.

2. SAME—EVIDENCE.
    Where, in an action on a policy, whether insured had paid the current premium thereon was in issue, and plaintiff introduced in evidence a receipt therefor, signed by defendant's general agents, whereupon defendant introduced evidence that the clerk in such general agents' office who had charge of issuing such receipts and collecting premiums had died without ever having accounted for such premium, other evidence that it was the general custom of defendant's agents to issue and mail to policy holders renewal receipts two weeks prior to the expiration of the policy, whether the premium was paid or not, was inadmissible.

3. SAME—QUESTION FOR JURY.
    Where, prior to the death of insured, insurer sent him a renewal receipt for the current premium due, which he turned over to plaintiff, his wife, and thereafter defendant sent insured a notice of cancellation, apprising him that defendant claimed that the premium had not been paid, and requesting a remittance of the premium for the time the renewal was in force, and there was no evidence that insured made any claim of mistake, whether the premium had been in fact paid was a question for the jury.

4. SAME—INSTRUCTIONS.
    Where, on an issue as to the payment of premium on a policy, plaintiff introduced a renewal receipt for the current year, and defendant intro-

duced evidence tending to impeach the receipt, instructions that the burden was on the defendant to prove by a preponderance of the evidence that neither it nor any one authorized in its behalf received the money recited in the renewal receipt to have been received by it, and that, if defendant had not so satisfied them, they should return a verdict for plaintiff, was erroneous, since the burden of proving the payment of the premium by a preponderance of the evidence did not shift from plaintiff to defendant on plaintiff's introduction of the receipt.

**5. SAME—CANCELLATION OF POLICY—NOTICE.**

Where a policy provided that there should be no liability thereunder unless the premium was paid, and that the insurer was at liberty at any time to cancel the policy, on giving notice and returning the unearned premium, and insurer notified deceased of its intention to cancel the policy, and requested payment of a portion of the current premium earned and unpaid, defendant's liability on the policy was at an end.

**6. SAME—ESTOPPEL.**

Where an accident policy authorized insurer to cancel the same generally, regardless of whether the premium had been paid or not, and there was evidence that notice of cancellation had been given under such provision, evidence tending to show that insurer was estopped to contest that the premium was not paid as against the beneficiary of the policy was inadmissible.

Appeal from Trial Term, New York County.

Action by Annie O'Connell against the Fidelity & Casualty Company of New York. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial on the minutes of the court, it appeals. Reversed.

See 82 N. Y. Supp. 1108.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

L. Sidney Carrere, for appellant.

Edward W. S. Johnston, for respondent.

LAUGHLIN, J. The action is brought to recover $1,000 on a policy of accident insurance issued to the plaintiff's husband, and payable to her. The policy provided, among other things, that if the decedent should receive bodily injuries, sustained through "external, violent, and accidental means," resulting in death within 90 days thereafter, independently of all other causes, the company would pay the plaintiff the sum of $1,000. The conditions attached to the policy provided, among other things, that proofs of death should be furnished within two months, and that legal proceedings should not be brought to recover under the policy within three months thereafter.

Evidence was introduced on the part of plaintiff tending to show that her husband accidently fell upon the sidewalk in the vicinity of his home during the early morning of February 22, 1898, striking his head upon the edge of a displaced flagstone, causing concussion of the brain, from which he died on the same day, and that proofs of death were duly presented within the time required, and more than three months prior to the commencement of the action.

The conditions on the back of the policy, and subject to which it was issued, provided, among other things, that the policy should not take effect unless the premium was paid in advance, and that the company might cancel at any time by written notice mailed to the assured

at the address given in his application, and inclosing therewith the company's check for the unearned portion of the premium. The complaint alleged the payment of the premium, and this allegation was put in issue. The policy was issued on the 7th day of September, 1894, for one year from noon of that date. It was renewed for another year by a renewal receipt dated the 1st of August, 1895, which recited payment of the premium; and it was renewed for another year by a similar receipt dated the 1st of September, 1896. As proof that the policy was in force at the time of her husband's death, and that the premium had been paid, the plaintiff introduced in evidence a renewal receipt bearing date the 1st day of September, 1897, which recited the receipt of the premium, and that the original policy was continued in force thereby for one year from the 7th day of February, 1897. It was conceded that this receipt was issued by the defendant's general agents. The receipt was presumptive evidence of the payment of the premium, and made a prima facie case for the plaintiff on this issue. The defendant, with a view of meeting this prima facie case, showed that the clerk in the office of its general agents who had charge of issuing the receipt and collecting the premium had died; and then it showed by the sole cashier of the general agents, who had charge of all moneys and checks for premiums received by them, and kept their books, that no check or money for this premium came into his hands or was turned over to him. The defendant also showed that it was the general custom of its agents to issue and mail to the policy holders renewal receipts two weeks prior to the expiration of the policy, whether the premium was paid or not. This evidence was subsequently stricken out as incompetent on motion of the plaintiff's counsel, and defendant excepted. We are of opinion that the evidence was properly stricken out. If an insurance company sees fit to forward renewal receipts to policy holders and give them credit for the premium, it will not do, by mere proof of this custom, to cast the burden upon the representatives or beneficiaries of a decedent to show that a premium, for payment of which the company has issued its formal receipt, has been actually paid. This would be placing upon the representatives or beneficiaries of a decedent a burden that ordinarily it would be impossible for them to bear. Of course, there is and should be no estoppel between the insurance company and the holder of a policy to whom the receipt is issued if the premium has not been in fact paid; but in case of his death a company issuing receipts in this manner should be required to produce if it wishes to impeach the receipt, evidence tending directly to show that it did not in fact receive the money. In view of the death of its employé who had charge of the collection of this premium and issuing the receipt, the defendant offered the best evidence it could, which was testimony tending to show that the money was not turned over to the cashier in the due course of business by the deceased employé. See Mayor, etc., of N. Y. v. Second Ave. R. Co., 102 N. Y. 572, 7 N. E. 905, 55 Am. Rep. 839; State Bank of Pike v. Brown, 165 N. Y. 216, 59 N. E. 1, 53 L. R. A. 513.

The notice of cancellation sent to the decedent apprised him that the company claimed that the premium had not been paid, for by it

he was requested to remit $2.50 the premium for the time the renewal was in force. It does not appear that he made any claim that this was a mistake. This evidence tended to impeach the receipt, and presented a question of fact for the consideration of the jury. In submitting this issue to the jury, the court, at the request of counsel for the plaintiff, charged that the burden was upon the defendant of proving by a preponderance of evidence that neither it, nor any one authorized in its behalf, received the money recited in the renewal receipt to have been received by it, and further that, if the defendant had not so satisfied them, they should render a verdict for the plaintiff. Counsel for the defendant excepted to each of these instructions. Technically the instructions were erroneous. Payment of the premium was a material allegation of the complaint, and the burden of establishing the fact by a preponderance of evidence rested upon the plaintiff throughout the case, and never shifted to the defendant. When the plaintiff has established a prima facie case, he has presented sufficient evidence to authorize a recovery, or require the submission of the case to the jury, in the absence of any evidence tending to rebut it; but, when the defendant gives evidence tending to rebut the plaintiff's prima facie case, then a question of fact is presented, upon which the plaintiff has the burden of presenting a preponderance of evidence in his favor to authorize a recovery. Farmers' Loan & Trust Co. v. Siefke, 144 N. Y. 354; 39 N. E. 358; Loudoun v. Eighth Ave. R. Co., 162 N. Y. 380, 387, 56 N. E. 988; Doheny v. Lacy, 42 App. Div. 231, 59 N. Y. Supp. 724. It may be that, in view of the nature of the evidence in this case, the jury were not misled by this charge, and that they understood the court merely as drawing attention to the probative force of the evidence introduced by the respective parties; the plaintiff's case resting on the defendant's written admission of the receipt of the money, and the defendant's evidence being weak and negative in character. The verdict, however, could not be sustained if we were to decide that these instructions did not constitute prejudicial error. The defendant gave evidence tending to show, and sufficient to warrant a finding, that this insurance policy was canceled by a notice duly mailed to the address of the decedent on the 7th day of January, 1898, some six weeks prior to his death. By virtue of the reserved right in the policy the company was at liberty at any time to cancel the policy upon giving such notice; but, if the premium had been paid, the notice of cancellation given would be ineffectual, for the reason that the unearned premium was not returned. If, however, the premium had not been paid, nothing was required but the notice of cancellation, and doubtless in that event the notice of cancellation would have been unnecessary, since by the terms of the policy no liability is created unless the premium is paid.

Counsel for the plaintiff claimed that the defendant was estopped, as against the plaintiff, from contending that the premium was not paid; and, under the defendant's objection and exception that the evidence was incompetent, irrelevant, and immaterial, he was permitted to show that the policy and all renewal receipts were delivered to her by her husband at about the time that he received them; that she read the last renewal receipt, and believed that the premium had been

paid; that she was able to pay it herself; and that she relied upon the statements contained in the receipt to the effect that the money had been paid. It does not appear that the policy was canceled for the nonpayment of the premium. It was canceled generally, and this the defendant had the right to do, under the policy, regardless of whether the premium had been paid or not. It is difficult to see how the company could be estopped, as against the plaintiff, when there could be no estoppel between her and her husband, who was the holder of the policy. The receipts were sent to him, not to her, and it made no representation to her concerning the payment of the premium. Baker v. Union Mutual Life Ins. Co., 43 N. Y. 283. But even if it were estopped from contesting its liability on the ground of nonpayment of the premium, it was still at liberty to interpose the defense that the policy had been canceled; and having shown its cancellation, which legally terminated the liability of the defendant, provided the premium had not been paid, upon which it was liable to return the unearned part, the question of estoppel could not arise on that issue. We are of opinion, therefore, that there was error, both in the instructions to the jury excepted to, and in the reception of this evidence, which requires a new trial.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.